DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Technology Strategies, Inc., | ) |
| | ) CASE NO. 5:03 CV 2439 |
| Plaintiff(s), | ) |
| | ) |
| v. | ) <u>MEMORANDUM OPINION</u> |
| | ) <u>AND ORDER</u> |
| Transcontinental Insurance Company, et al., | ) |
| | ) |
| Defendant(s). | ) |
| | ) |

This matter is before the Court on plaintiff's motion to remand (Doc. No. 10) and defendants' motion to dismiss the two individual defendants (Doc. No. 5). For the reasons set forth below, plaintiff's motion is denied and defendants' motion is granted.

## **I. BACKGROUND**

Plaintiff initiated this action in the Court of Common Pleas of Summit County, Ohio on October 22, 2003. The complaint named four defendants (Transcontinental Insurance Company ["TIC"], CNA Insurance Company ["CNA"], Robert Podges and Nicholas T. Puskar) and sought damages for (1) breach of an insurance contract; (2) bad faith denial of insurance claim; (3) promissory estoppel; (4) unjust enrichment; and (5) fraud and deceit. It was removed to this Court by all of the defendants on November 26, 2003 on the basis of diversity of citizenship.

(5:03 CV 2439)

Plaintiff had purchased a commercial property insurance policy from TIC and CNA. The policy included coverage against employee theft. On March 29, 2001, plaintiff suffered a loss of property due to employee theft when, following plaintiff's announcement that it was suspending operations for financial reasons, several of its employees stole items from plaintiff's place of business. Plaintiff provided prompt and timely notice of the loss to its insurance agency, Jackson Dieken & Associates, Inc. CNA and TIC obtained the services of Investigative Options, Inc. to investigate the claimed loss. At all relevant times, defendant Podges was a claims representative for the defendant insurance companies and defendant Puskar was an investigator employed by Investigative Options.

The gravamen of the complaint is that plaintiff's insurance claim was denied, wrongfully and in bad faith, because plaintiff had failed to file suit within the two-year time limit set by the insurance contract. Plaintiff does not deny the failure to timely file, but alleges that the failure was caused by the fraudulent, bad faith, and malicious actions of the defendants, including, in particular, the actions of Podges and Puskar who repeatedly and purposely delayed the investigation in various ways while falsely representing to the plaintiff that the insurance company admitted liability and intended to settle the claim. Plaintiff alleges that the defendants acted as they did with the intent of inducing plaintiff to delay filing suit so that the claim could ultimately be denied on that ground.

Plaintiff's motion to remand is based on an argument that complete diversity is lacking, since defendant Podges is an Ohio resident. Defendants, on the other hand, argue (1) that no claim can be stated against Podges and Puskar, who were not parties to any insurance contract but were merely agents of the defendant insurance companies, and (2) that Podges was fraudulently joined as a

2

(5:03 CV 2439)

defendant solely in an attempt to defeat diversity jurisdiction. Defendants argue that Podges and Puskar should be dismissed <u>and</u> that the case was properly removed notwithstanding the fact of Podges's Ohio citizenship.

## II. DISCUSSION

The complaint identifies defendant Podges, an Ohio resident, as "a claims representative employed by Defendants CNA and TIC." (Compl. ¶ 5). It identifies Puskar, a Pennsylvania resident, as "an investigator employed by Investigative Options, Inc., [who was hired by] Defendants CNA and [TIC] . . . to investigate Plaintiff's claim." (Compl. ¶ 6). It further indicates that the contract of insurance held by the plaintiff was issued by CNA and TIC. (Compl. ¶ 7, 8). The complaint never alleges any privity of contract between the plaintiff and Podges and/or Puskar. In fact, it never alleges anything but an agency relationship.

In Ohio, the "general rule [is] that '[a]n agent who acts for a disclosed principal and who acts within the scope of his authority and in the name of the principal is ordinarily not liable on the contracts he makes' because the third party intended to deal with the principal, not the agent[.]" <u>Soberay Mach. & Equipment Co. v. MRF Limited, Inc.</u>, 181 F.3d 759, 767-68 (6th Cir. 1999) (quoting <u>Smith & Associates, Inc. v. Everett</u>, 1 Ohio App.3d 118 (Ohio App. 1981)). There are, however, exceptions to this general rule.

> First, an agent may be held personally liable when he has manifested an intention to bind or contract for himself. <u>See</u> <u>WUPW TV-36 v. Direct Results Marketing, Inc.</u>, (1990), 70 Ohio App.3d 710, 591 N.E.2d 1345. Second, an agent is not protected

3

(5:03 CV 2439)

> from personal liability when the third party's motivation for entering into the contract is based solely and exclusively upon the credit of the agent. <u>See</u> 3 Ohio Jurisprudence 3d. Agency Section 136.

<u>Id</u>. at 768. Nothing in the complaint suggests that either of these two exceptions would apply to either Podges or Puskar.

In fact, even the fifth cause of action for fraud and deceit, which plaintiff argues renders Podges and/or Puskar individually liable, alleges no more than an agency relationship between these two individuals and CNA/TIC. This fifth cause of action alleges that plaintiff purchased the insurance package on the strength of representations made by the insurance companies "through their agents and representatives[.]" (Compl. ¶ 32).[1] It further alleges that false representations continued "into the claims adjusting process" (Compl. ¶ 33) and that these false representations "were made for the purpose of defrauding Plaintiff and inducing Plaintiff to pay to Defendants premiums for non-existent insurance coverage and to refrain from filing a legal action against Defendants in a timely manner." (Compl. ¶ 34). Even if this last assertion is taken as completely true, and even if Podges and Puskar both made such representations, this still does not reflect anything more than an agency relationship. It does not allege that Podges and/or Puskar stood to gain anything personally. Premiums were made to the defendant insurance companies and successful claims, if any, would be paid out of the pockets of those same companies. Legal actions for breaches under the contracts of insurance would have to be brought against the companies.

---

[1] Notably, the complaint does not allege that any of these particular misrepresentations were made by Podges or Puskar.

4

(5:03 CV 2439)

Furthermore, the duty, if any, owed to plaintiff by Podges and/or Puskar arose solely out of the fact that they were agents of the insurance companies. But for the agency, the alleged representations of Podges and/or Puskar would not be actionable. If they had made such representations while <u>not</u> employed by the insurance companies (i.e., while <u>not</u> agents of the companies), clearly there would be <u>no</u> cause of action against the two individuals for misrepresentations, no matter how flagrant. Fraud, to be actionable, requires not only a duty on the part of the induc<u>er</u>, but <u>reasonable</u> reliance on the part of the induc<u>ee</u>. No one would think it reasonable to rely on representations that the insurance companies would pay a claim if such representations were made by persons known <u>not</u> to be employed by the insurance companies! Furthermore, if Podges and Puskar were <u>not</u> employed by the insurance companies at the time they made whatever representations they made, there would be no cause of action against the insurance companies. Therefore, agency is key to the liability question here. The tort alleged in the fifth cause of requires an agency relationship. Therefore, agency principles apply and, under those principles, as noted above, the agent is generally not individually liable.

Plaintiff cites <u>Byrd v. Faber</u>, 57 Ohio St.3d 56 (1991) for the proposition that "both an employer and an employee are liable for an employee's fraudulent acts done in furtherance of the employers [sic] business." (Doc. No. 9, at [unnumbered] p.5].[2] However, the <u>Byrd</u> case has no applicability here. In <u>Byrd</u>, the issue was whether the <u>employer</u> could be held liable for tortious acts of its employee on a theory of respondeat superior. There the plaintiffs sued a church alleging respondeat

---

[2] Every document filed by the plaintiff in this case violates LR 10.1 which requires <u>numbered</u> pages.

5

(5:03 CV 2439)

superior liability for the tortious actions of the church's pastor. The pastor, Rev. Faber, was also sued in a separate action for professional malpractice, fraud, intentional infliction of emotional distress, and nonconsensual sexual conduct.[3] One critical difference between Byrd and the instant case is that, in Byrd, it was arguably possible for the Byrds to prove, at the very least,[4] a battery (nonconsensual sex) committed by Rev. Faber, whether or not he had been employed by the church. The elements of the tort did not depend on or arise from an agency relationship. However, the fact that there was an agency relationship had a bearing on whether the church could be held liable for the damages. No one is trying to argue here that Podges and/or Puskar are solely liable and that their actions cannot bind the insurance companies. In fact, the defendant companies are admitting that these two individuals were their agents.

Here, plaintiff wants to argue that, because Podges in particular can be held individually liable for fraud, he was not fraudulently joined as a party and his presence destroys diversity, requiring remand. The Court finds no merit in this argument. There is complete failure to state any legitimate claim against Podges and/or Puskar in their individual capacities. Therefore, naming them (or rather,

---

[3] During the course of counseling the Bryds for marital problems, the pastor allegedly forced Mrs. Byrd to engage in sexual activity with him.

[4] Although Ohio recognizes claims for nonconsensual sexual conduct (i.e., battery), as well as fraud and intentional infliction of emotional distress, the Byrd court pointed out that "to avoid a redundant remedy, . . . any functional theory of clergy malpractice needs [to] address incidents of the clergy-communicant relationship not already actionable." Byrd, 57 Ohio St.3d at 57-58 (quoting Strock v. Pressnell, 38 Ohio St.3d 207, 212 (1988)) (internal quotation marks omitted). Byrd concluded that there was "no basis for recognizing [plaintiffs'] claim for clergy malpractice, either against Faber, or, through application of the doctrine of respondeat superior, against the appellants." Id. at 58.

(5:03 CV 2439)

naming Podges, an Ohio citizen) cannot destroy diversity.  Furthermore, there is no reason to keep them in the lawsuit.  They are no more than material witnesses, not defendants.

### III.  CONCLUSION

For the reasons discussed above, defendants' motion to dismiss the individual defendants Robert Podges and Nicholas T. Puskar (Doc. No. 5) is granted and plaintiff's motion to remand (Doc. No. 10) is denied.

IT IS SO ORDERED.

| | |
|---|---|
| February 9, 2004 | */s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |