**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CORBO PROPERTIES, LTD, ) | CASE NO:  1:09-cv-0501 |
| ) | |
| Plaintiff, ) | |
| ) | JUDGE BOYKO |
| v. ) | |
| ) | MAGISTRATE JUDGE VECCHIARELLI |
| SENECA INSURANCE COMPANY, INC., ) | |
| ) | MEMORANDUM OPINION AND ORDER |
| Defendant. ) | DOC. NO. 29 |

This case is before the magistrate judge on referral.  Before the court is the second motion of plaintiff, Corbo Properties, Ltd. ("Corbo"), to amend its complaint. Doc. No. 29.  Defendant, Seneca Insurance Company, Inc. ("Seneca"), opposes Corbo's motion.  Doc. no. 31.  For the reasons given below, the court grants Corbo's motion in its entirety.

I.

The parties do not contest the following facts.  Corbo is an Ohio limited liability company.  It owns a property at 12312 Mayfield Road, Cleveland, consisting of a restaurant/wine bar on the lower level and apartments on the upper level ("the building").  Seneca insured the building, including fixtures and appliances, from May 1, 2008 through May 1, 2009, up to a policy limit of $1,426,000 ("the policy").

On June 30, 2008, a fire damaged the building.  Corbo reported the fire to

Seneca, which then investigated the cause of the fire and the extent of damage. Corbo and its owners, Grace and Joseph Corbo ("the Corbos"), co-operated with the investigation to the extent of appearing for examinations under oath and providing documents requested by Seneca.

Two months after the examination of the Corbos, Corbo's counsel sent Seneca a letter of inquiry regarding the status of the investigation. Seneca then requested nine additional categories of documents. When Corbo sent additional documents to Seneca on January 23, 2009, a cover letter from counsel asked whether litigation would be necessary to enforce Corbo's rights under the policy. Corbo received no immediate response from Seneca. On February 13, 2009, Corbo filed suit in state court, alleging breach of contract and breach of fiduciary duty against Seneca and defamation, and violations of the Ohio Unfair Trade Practices Act, Ohio Unfair Properties/Casualty Claims Settlement Practices Act, and Ohio Unfair or Deceptive Insurance Practices Act against Seneca and other defendants. The complaint sought damages and declaratory judgment.

Seneca denied coverage on February 23, 2009. On March 6, 2009, Seneca removed the state action to federal court on the basis of diversity jurisdiction.

On March 6, 2009, defendants moved to dismiss the claims against all defendants except Seneca and to narrow the claims against Seneca. Doc. No. 3. The defendants argued that the statutory violations pleaded by Corbo included no private right of action, that Corbo had failed properly to plead defamation, that these defendants could not be liable for Seneca's alleged breach of contract, and that all claims against these defendants were fraudulent efforts to defeat diversity.

On March 31, 2009, Corbo moved to remand the action to state court.  Doc. No. 9.  On April 15, 2009, Corbo moved to amend the complaint.  Doc. No. 13.  The motion to amend sought the following:

> (1) clarify the causes of action being asserted against each defendant, (2) provide more specific allegations against each defendant, and (3) add an additional defendant, Lorain National Bank, which is listed as a mortgagee on the insurance policy and has an interest in this proceeding, and (4) add two additional plaintiffs, Grace Corbo and Joseph Corbo, the partners who own Corbo Properties, Ltd.

Motion to File an Amended Complaint at 1.

On August 14, 2009, the court issued an order denying Corbo's motions to amend and remand.  The court also granted the motion to dismiss all defendants except Seneca and to narrow the claims against Seneca to a breach of insurance contract.

Corbo now moves a second time to amend the complaint.  In particular, Corbo seeks to add to the complaint a cause of action for bad faith and punitive damages.  Seneca opposes Corbo's motion.

II.

Federal R. Civ. P. 15 allows a party to amend its pleadings once as a matter of course before a responsive pleading is served or, if no response is required, within 20 days after the pleading was served.  Thereafter, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  "The Rule was intended to 'reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings.'" *Holland v. Metropolitan Life Ins. Co.*, 1989 WL 8994, at *1 (6th Cir. Feb. 3, 1989) (quoting *Tefft v. Seward,* 689 F.2d 637, 639 (6th Cir. 1982)).  The rule "therefore

-3-

assumes 'a liberal policy of permitting amendments.'" *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005) (quoting *Ellison v. Ford Motor Co.,* 847 F.2d 297, 300 (6th Cir. 1988). "[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Miller v. Administrative Office of Courts*, 448 F.3d 887, 898 (6th Cir. 2006).

"In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (quoting *Coe v. Bell*, 161 F. 3d 320, 341-42 (6rth Cir. 1998).[1] "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001). "Notice" incorporates the doctrine of "relation back": "As long as the amended complaint refers to the same transaction or occurrence that formed the basis for the original complaint and the defendant was put on notice of the claim by the first complaint, there will be no bar to amendment; even new defendants and new theories of recovery will be allowed." *Williams v. United States*, 405 F.2d 234, 237 (5th Cir. 1968) (quoting *Travelers Ins. Co. v. Brown*, 5 Cir., 1964, 338 F.2d 229, 234 (5th Cir. 1964), *cited by Hageman*, 486 F.2d at 484. "A

---

[1] The quote originated in *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)

motion for leave to amend may be denied for futility 'if the court concludes that the pleading as amended could not withstand a motion to dismiss.'" *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (quoting *Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 249 (6th Cir. 1986)).

A court should not deny a motion to amend without "at least some significant showing of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986). Delay alone is not sufficient to cause prejudice and is not a sufficient reason for denying a motion to amend. *Wade*, 259 F.3d at 459; *Duggins v. Steak "N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).

III.

Corbo asserts a variety of explanations for moving to amend its complaint at this time. In particular, it points to information obtained from the Fed. R. Civ. P. 30(b)(6) deposition of Gregory Crapanzano ("Crapanzano"), October 6, 2009; Doc. No. 33.[2] That information, according to Corbo,[3] has been alleged in the proposed amendment. Corbo also notes that when it first filed its Complaint, Seneca had not as yet denied Corbo's claim, thus making a claim of bad faith premature. For these reasons, Corbo asserts, it is justified in moving at this time to amend the complaint to include a cause of action for bad faith. Seneca responds that amendment should not be allowed because the amendment would be futile. According to Seneca, Corbo would be unable to plead successfully sufficient facts to establish a cause of action for bad faith or for an award of

---

[2] Corbo filed the motion to amend on October 14, 2009.

[3] Corbo's Reply, Doc. No. 34, pp. 3-5, cites the deposition as the source of these allegations.

-5-

punitive damages upon that cause of action.

Ohio law requires an insurer to act in good faith in handling and paying the claims of its insureds.  *Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272, 272, 452 N.E.2d 1315, 1316 (1983).  "Under Ohio law, '[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor.'"  *Great Western Cas. Co. v. Flandrich*,  605 F. Supp. 2d 955, 979-80 (S.D. Ohio 2009) (quoting *Zoppo v. Homestead Ins. Co.,* 71 Ohio St. 3d 552, 552, 644 N.E.2d 397, 397 (1994) (syllabus by the court) (citations omitted)).  A finding of a particular intent is not an element of bad faith.  *Wagner v. Midwestern Indem. Co.*,  83 Ohio St. 3d 287, 290, 699 N.E.2d 507, 510 (1996); *see also Zoppo*, 71 Ohio St. 3d at 555, 644 N.E.2d at 400.  An insurer lacks reasonable justification when it denies the claim in an arbitrary or capricious manner.  *Great Western*,  605 F. Supp. 2d at 979-80.

An award of punitive damages requires meeting a higher standard of proof than is required for a showing of bad faith:

> Punitive damages are recoverable in an action against an insurance company for breach of its duty of good faith in refusing to pay a claim only upon proof of actual malice, fraud, or insult on the part of the insurer.  Actual malice is (1) that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.  Furthermore, in addition to the requisite mental state, an award of punitive damages must also be supported by a showing of misconduct greater than that required to prove negligence.

*CSS Publishing Co. v. Am. Economy Ins. Co.*, 138 Ohio App. 3d 76, 86, 740 N.E.2d 341 (2000) (citations omitted).

In arguing that it would be futile to allow Corbo to amend to add a cause of action

-6-

for bad faith and to seek punitive damages, Seneca makes a long series of factual assertions. Brief in Opposition, pp. 7-9.[4] Corbo responds to Seneca's argument that amendment would be futile with its own long set of factual assertions, supported by references to the Crapanzano deposition. Reply at 3-5.

Both parties appear to assume that the test for futility of amendment is the standard for summary judgment. But that is not the test.[5] As already noted, a district court should deny a motion to amend as futile if the proposed amendment could not withstand a motion to dismiss. To survive a motion to dismiss, a complaint must contain direct or inferential allegations with respect to all material elements required for recovery. *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007). The court must accept plaintiffs' well-pleaded factual allegations as true, *id.*, and the allegations of the complaint must be at least plausible on their face, *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541-42 (6th Cir. 2007).

The court need not, however, accept conclusions of law as true:

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.2d 929 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant -unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation

---

[4] Seneca conceded in its opposition brief that "none of this evidence is in the record . . . ." Brief in Opposition at 9. Since that time, Corbo has filed the Crapanzano deposition. That deposition and the accompanying exhibits support Seneca's assertions.

[5] Moreover, even if this were the test, the case is not currently in a sufficient posture to provide a basis upon which the court might apply the summary judgment standard.

> of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.,* at 557, 127 S.Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009). According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."  Weisbarth*, 499 F.3d at 541 (quoting *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007)). That is, "*Iqbal* interpreted *Twombly* to require more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for relief." *Weisbarth*, 499 F.3d at 542.

Corbo's proposed amendment is pleaded as follows:

19. In adjusting plaintiff's claim, Seneca, through its agents, adjusters, and investigators, breached the duty of good faith that it owed to the plaintiff pursuant to *Zoppo v. Homestead Insurance Company* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397 and *Wagner v. Midwestern Indemnity Company* (1998), 83 Ohio St.3d 287, 699 N.E.2d 507 by conducting an inadequate investigation, unnecessarily delaying the claim, and unreasonably accusing its insured of arson.

20. Seneca's accusation of arson was unreasonable because, among other reasons:

. The Cleveland Fire Investigation Unit determined that the fire was an

    unintentional electrical fire.

- Joseph and Selena Corbo were visiting relatives in Florida at the time of the fire, and Seneca has no evidence to the contrary.

- Grace Corbo, age 69, was home in Mayfield Heights with her sick husband at the time of the fire and Seneca has no evidence to the contrary.

- Seneca has no evidence that the fire, even if it was set, was set with a timing device.

- Seneca has no evidence that Joseph or Selena Corbo were in Cleveland on the day of the fire.

- Seneca has no evidence that the Corbos hired anyone to set the fire.

- The building was not secure at the time of the fire. The Cleveland Fire Department, in responding to the scene, reported that two rear doors were unlocked, so that individuals other than the insureds had access to the building in order to set a fire.

- Most of the building's locks were never changed from the time the Corbos purchased the building in 1998 until the time of the fire, and many employees, managers, and tenants had keys over the years.

- The rear door of the building did not always lock when it was closed, and at the time of the fire employees were going into and out of the building on almost a daily basis.

- Seneca has no evidence that the Corbos were late on any of their loans or mortgages at the time of the fire.

- Seneca has no evidence that the Corbos were late on any of their credit card payments.

- Seneca has no evidence that the Corbos were late on any of their utility bills.

- The Dun & Bradstreet report ordered by Seneca—the only credit-type report ordered by Seneca during its investigation of this claim—showed that the bakery had the highest credit appraisal possible for a company not currently supplying financial information to D&B.

- The Corbos have no criminal records.

- The Corbos have never had a prior incendiary fire.

- The Corbos never asked to increase the policy limit from the time the policy was first purchased in 2004.

- The Corbos had no insurance on their personal property, only the building and fixtures, so they were probably underinsured.

21. Seneca's investigation of this claim was inadequate because, among other reasons:

- Seneca has no information in its claim file to indicate that it ever talked to the investigators from the Cleveland Fire Investigation Unit in order to ascertain why they ruled the fire an unintentional electrical fire.

- Seneca contends that the Corbo's primary motive in setting the fire was their desire to get rid of the building because a note on the building with Lorain National Bank—which was current at the time of the fire—was coming due in March 2009, about nine months *after* the fire. Despite this belief, Seneca never talked to anyone at the bank to ascertain if this loan presented any problem for the bank or if the loan could be renegotiated. Further, Seneca never asked the Corbos how they were going to handle this loan, or gave the Corbos any opportunity to explain to Seneca why this loan did not present a problem.

- The Corbos had an offer to buy the building for over $1 million, and turned it down. Despite this knowledge, Seneca never talked to the prospective purchaser.

- Seneca denied the claim in part because the Corbos supposedly misrepresented where Valeria Corbo—Joseph's sister—and her boyfriend—Daniel Parker—were living at the time of the fire. Selena said they were living in a house that Grace owned in South Euclid and Grace said they were not. Despite using this as a basis for the denial, Seneca never interviewed either Valerie Corbo or Daniel Parker to ascertain where they were actually living.

- Despite its belief that the Corbo's primary motive to set the fire was financial, Seneca never talked to the Corbo's accountant, Mary Ehrman, to fully ascertain the Corbo's financial condition.

- Seneca requested that the Corbos prepare a list of all of the people who had keys to the building. The Corbos provided the list, but Seneca never interviewed any of the people that were identified.

>    .   Seneca did not take recorded statements from anyone except Selena, Joseph, and Grace.
>
> 22. The actions and omissions of the Seneca demonstrate malice, aggravated or egregious fraud, oppression, or insult and Seneca, as principal or master of its agents and adjusters, authorized, participated in, and ratified the actions or omissions of its agents and adjusters in this regard.
>
> 23. As a direct and proximate cause of the Seneca's lack of good faith, plaintiff has suffered legally compensable damages including increased loss of use, increased interest, and economic harm, and has incurred litigation expenses and attorney's fees.
>
> 24. Plaintiff prays for judgment on this count in the amount of $3,000,000 in compensatory damages and $6,000,0000 in punitive damages, the exact amount to be determined at trial, plus interest, costs, and attorney's fees as allowed by law.

Assuming the preceding allegations to be true, as the court must, Corbo has set forth a claim plausible on its face for relief upon a cause of action for bad faith.  Consequently, the proposed claim of bad faith is sufficiently well pleaded to withstand a motion to dismiss.

In addition, and again assuming Corbo's allegations to be true, Corbo has set forth a claim plausible on its face that Seneca fraudulently refused to pay Corbo's claim.  Corbo's pleaded demand for punitive damages, therefore, is sufficient to withstand a motion to dismiss.  For these reasons, the court cannot conclude that Corbo's amendment to plead a cause of action for bad faith or to demand punitive damages would be futile.

Finally, Seneca makes no effort to demonstrate that it did not have notice of the transaction or claim underlying the proposed amendment or would be substantially prejudiced by permitting the amendment.  As has already been noted, "[n]otice and substantial prejudice to the opposing party are critical factors in determining whether an

-11-

amendment should be granted," *Wade*, 259 F.3d at 458-59, and "[a] court should not deny a motion to amend without 'at least some significant showing of prejudice to the opponent,'" *Moore*, 790 F.2d at 562.  As Seneca fails to demonstrate futility, lack of notice, or prejudice, there is no reason to deny Corbo's motion to amend.

IV.

For the reasons given above, Corbo's motion to amend is granted in its entirety. Corbo has until Monday, January 25, 2010, to file an amended complaint.


Date:  January 14, 2009             */s/ Nancy A. Vecchiarelli*
                                    United States Magistrate Judge