UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CORBO PROPERTIES, LTD | ) | CASE NO. 1:09 CV 0501 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| SENECA INSURANCE | ) | |
| COMPANY, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>CHRISTOPHER A. BOYKO, J:</u>**

This matter is before the Court on the Report and Recommendation of the Magistrate Judge regarding Defendant Seneca Insurance Company, Inc.'s Motion (ECF DKT #63) for Partial Summary Judgment, to dismiss Plaintiff Corbo Properties, Ltd's Second Cause of Action, i.e., Lack of Good Faith in denying Plaintiff's insurance claim. After conducting a *de novo* review of the issues raised, the Court ADOPTS IN FULL the Report and Recommendation. Therefore, the Court dismisses Plaintiff's Second Claim for failure to show a genuine issue as to any material fact.

**I. Factual Background**

Plaintiff owns a commercial building located at 12312 Mayfield Road, Cleveland, Ohio ("the Building"). On June 30, 2008, while the Plaintiffs were in Florida, a fire occurred at the Building. The Plaintiff reported the fire to its insurer, Defendant, and Defendant commenced an investigation. Subsequently, Defendant denied the insurance claim, believing Plaintiff caused the fire.

The Cleveland Fire Investigation Unit's ("CFIU") initial investigation indicated that the cause

of the fire was unknown.  Later, the report was amended, listing the cause of the fire as a lightning strike that caused an extremely high voltage surge that heated the Building's wiring and ignited the combustible wood at the origin of combustion.  Defendant hired a private fire investigating company that concluded the cause of the fire was incendiary in nature, having been deliberately set with the manual application and subsequent ignition of gasoline.  Additionally, the private fire investigating company considered CFIU's reported cause; and after researching lightning strikes in the area around the time of the fire and considering their own findings of burn patterns consistent with the application and ignition of fire accelerants, concluded that a lightning strike was not a viable cause.

At the time of the fire the Building was vacant, including unoccupied apartments.  In the months leading up to the fire, Plaintiff had incurred significant expenses by opening a new business in a different building.  Plaintiff had secured two loans amounting to nearly two-million dollars in order to fund the new business, for which the Corbos were personally liable.  Additionally, the Corbos had spent several thousand dollars in personal money to fund the new business, most of which was via credit card debt.

Prior to the fire, Plaintiff had been in negotiations to sell the Building, but the deal fell through. The Corbos were going to use the proceeds of that sale to pay for one of their loans, an approximately one-million dollar, one-year promissory note that was coming due in March 2009.  Defendant had a forensic accountant investigate the Corbos' financial situation.  From the investigation, the accountant concluded that due to the sale of the Building falling through and the decline in cash flow, the Corbos did not have the liquid assets to pay-off the one-million dollar note.  Although various developers wanted to tear the Building down to build a hotel, at the time of the fire there were no other serious offers to purchase the Building.  However, Plaintiff stood to be paid $1,426,000 from the insurance

claim.

The Corbos did hope to refinance the one-million dollar, one-year loan if they were unable to pay it off in time. The loan officer who originated the loan assured them that he did not believe it would be a problem to refinance. Additionally, the Corbos were not late on any loan, credit card, or utility payment; and the business, as well as the Corbos, had good credit ratings. There was no evidence of threats to burn down the Building, and the Corbos stated that they did not know of anyone who would want to burn it down. Furthermore, there were no prior break-ins or fires at the Building, and no recent fires in the area.

The Corbos had not changed the locks on the Building since it was purchased in 1998. The Corbos, their family members, and their past and present employees had keys to the Building. Past employees returned their keys; but the Corbos could not say whether those employees had made and kept copies. The Corbos were the last identified persons in the Building and they had allowed the ADT security system to deactivate a few months prior to the fire.

There are conflicting reports as to whether the doors to the Building were locked or unlocked when the firefighters arrived to put out the fire. The report by the fire department indicated that the back doors to the Building were unlocked; but upon a subsequent interview of the participating firefighters by the Defendant, no one indicated that any door was unlocked upon their arrival to put out the fire. The Building had no signs of forced entry, except the damage caused by the firefighters, and there were no signs of intruders.

## II.  Law and Analysis

### A.  Civil Rule 72(b) Standard

Pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(C), the District Court shall review

*de novo* any finding or recommendation of the Magistrate's Report and Recommendation that has been specifically objected to. The District Court need only review the Magistrate Judge's factual or legal conclusions that are specifically objected to by either party. Thomas v. Arn, 474 U.S. 140, 150 (1985).

> Local Rule 72.3(b) reads in pertinent part:
>
> The District Judge to whom the case was assigned shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge.

### B. Summary Judgment Standard Pursuant to Civil Rule 56(c)

A summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See, Fed. R. Civ. P. 56(c). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F. 3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347. This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F. 3d 1079, 1087 (6th Cir.

1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III. The Recommendation of the Magistrate Judge

#### A. Standard for Determining Lack of Good Faith

The Magistrate Judge correctly states the standard for determining lack of good faith, i.e., "reasonable justification." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552 (1994). The Magistrate Judge correctly explains that an "arbitrary and capricious" denial is not reasonably justified; but a claim that is "fairly debatable" would be reasonably justified. "An insurer may be reasonably justified in denying an insured's claim for fire damage when there is sufficient evidence that the insured committed arson to obtain the claim proceeds." *Zoppo* at 555. Therefore, if the question of the cause of the fire is "fairly debatable," the defendant, relying on sufficient evidence of arson, is reasonably justified in denying the insurance claim. So long as the evidence is sufficient, the denial is not "arbitrary and capricious."

The use of "fairly debatable"or "arbitrary and capricious" are merely different ways of explaining and expressing the standard of "reasonable justification." In *Marsteller v. Security*

*of Am. Life Ins. Co.*, 2002 U.S. Dist. Lexis 17560, *13-14 (N.D. Ohio Sept. 12, 2002), Judge Carr explains that the "fairly debatable" test is intended to provide guidance when applying the "reasonable justification" standard:

> Under Ohio law, "where a claim is fairly debatable the insurer is entitled to refuse the claim as long as such refusal is premised on a genuine dispute over either the status of the law at the time of the denial or the facts giving rise to the claim. *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St. 3d 690, 590 N.E.2d 1228 (1992). To grant a motion for summary judgment brought by an insurer on the issue of whether it lacked good faith in the satisfaction of an insured's claim, a court must find, after viewing the evidence in a light most favorable to the insured, that the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim. *Tolkes & Son*, 65 Ohio St. 3d at 630.

Additionally, Plaintiff asserts that the Magistrate Judge relied on cases that were overruled by *Zoppo*, specifically *Tolkes & Son, Inc. v. Midwestern Indem. Co.*, 65 Ohio St. 3d 621 (1992). *Tolkes* used the "fairly debatable" test to determine what was "reasonably justified" in the bad faith context. *Id*. Since *Zoppo*, state and federal courts across Ohio, including this Court, have repeatedly applied the "fairly debatable" test and have continued to cite *Tolkes* in deciding bad faith claims, with many involving summary judgment motions. See, *Werner v. Progressive Preferred Ins.* Co., 310 Fed. Appx. 766, 769, 2009 U.S. App. LEXIS 2995 (6th Cir. Feb. 12, 2009); *Smith v. Allstate Indem. Co.*, 304 Fed. Appx. 430, 432, 2008 U.S. App. LEXIS 26362 (6th Cir. Dec. 23, 2008); *B-T Dissolution, Inc. v. Provident Life and Accident Ins. Co.*, 123 Fed. Appx. 159, 164, 2004 U.S. App. LEXIS 26047 (6th Cir. Dec. 16, 2004); *Hartman v. Conseco Senior Health Ins. Co.*, 2010 U.S. Dist. LEXIS 48725, *21 (S.D. Ohio May 18, 2010); *Collins v. National Union Fire Ins. of Pittsburgh, PA., Inc.*, 2009 U.S. Dist. LEXIS 60587, *5-7 (S.D. Ohio July 13, 2009); *Turner v. Liberty Mut. Fire Ins. Co.*, 2007 U.S. Dist. LEXIS 61360, *15 (N.D. Ohio Aug. 21, 2007); *Ullman v. Auto-Owners Mut. Ins.*

*Co.*, 502 F. Supp. 2d 737, 747 (S.D. Ohio 2007); *Fair v. State Farm Fire and Cas. Co.*, 426 F. Supp. 2d 672, 678 (N.D. Ohio 2006); *Vogias v. Ohio Farmers Ins. Co.*, 177 Ohio App. 3d 391, ¶39-41 (11th Dist. 2008); *Garrett v. Ohio Farmers Ins. Co.*, 2005-Ohio-413, ¶16, 2005 Ohio App. LEXIS 358 (11th Dist. Feb. 4, 2005); La Plas *Condo. Ass'n v. Utica Nat'l Ins. Group*, 2004-Ohio-5347, 2004 Ohio App. LEXIS 4873 (3d Dist. Oct. 4, 2004); *Morland v. Allstate Ins. Co.*, 2000 Ohio App. LEXIS 511 (7th Dist. Feb. 3, 2000).

*Zoppo* did not mention *Tolkes* and did not overrule it as the Plaintiff suggests. Although some courts have said that *Zoppo* overruled *Tolkes*, those courts have made it clear that *Tolkes* was only overruled for its application of the "intent" requirement set forth in *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St. 3d 690, 590 N.E.2d 1228 (1992), not the application of the "fairly debatable" test.  See, *Maxey v. State Farm Fire and Cas. Co.*, 689 F. Supp. 2d 946, 953 (S.D. Ohio 2010); *TMD, Inc. v. Hasting Mut. Ins. Co.*, 2007 U.S. Dist. LEXIS 27634 (N.D. Ohio Apr. 13, 2007); *Mayle v. Allstate Indem. Co.*, 2007 U.S. Dist. LEXIS 8544, *8-9 (N.D. Ohio Feb. 6, 2007); *American Family Ins. Co. v. Taylor*, 2010-Ohio-2756. ¶48, 2010 Ohio App. LEXIS 2278 (5th Dist. June 16, 2010); *Abon, Ltd. v. Transcontinental Ins. Co.*, 2005-Ohio-3052, ¶45, 2005 Ohio App. LEXIS 2847 (5th Dist. June 16, 2005).  All of the above mentioned cases used the "fairly debatable" test to assist in determining whether the insurance company was reasonably justified in denying the claim.

Based upon the evidence used by Defendant, it had reasonable justification for denying the insurance claim on the basis of arson. The elements of arson are (1) a fire of incendiary origin; (2) motive to cause the fire; (3) opportunity to cause, or participate in causing, the fire.  See, *Caserta v. Allstate Ins. Co.*, 14 Ohio App. 3d 167, 169, 470 N.E. 2d 430, 433 (1983); *Thomas*

*v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir. 1992). Defendant relied on a report prepared by an independent fire investigation firm which concluded that the cause of the fire was incendiary based upon fire debris samples and low level burn patterns. The independent firm also entertained the cause found by the CFIU and reported to the Defendant that the CFIU's possible cause of the fire was not viable.

Next, Defendant relied on the report by an independent forensic accountant to determine the Corbos had motive. The report concluded that in the months leading up to the fire, the Corbos had experienced a decreased cash flow, due to opening a new business. Further, at the time of the fire, they lacked sufficient funds to cover a one-year loan that was due in March 2009, which was taken out to finance the new business. In addition, there were no significant offers on the Building, with the most recent deal falling through shortly before the fire. The Corbos could not identify anyone else who would have any reason to set the Building on fire.

Lastly, Defendant relied on interviews by the independent fire investigator of the fire fighters that responded to the fire, and the testimony of the Plaintiffs as to any possible opportunity to cause the fire. None of the firefighters who were interviewed could recall ever finding any of the doors open or unsecured in responding to the fire. There were no signs of forced entry or other signs of a break-in by an unknown arsonist. The Corbos had recently disabled the ADT security system, and they were the last confirmed persons in the Building. The issuance of keys to the Building was restricted to the Corbos, their family members, and current employees.

Defendant could reasonably conclude that the fire was incendiary in origin. Although Plaintiff has adduced sufficient evidence to raise a jury issue regarding whether the damage to

the Building was a loss covered by its insurance policy, the test is not if the denial was correct, but whether the denial was "arbitrary and capricious", and whether there existed a reasonable justification for the denial. *Thomas*, 974 F.2d at 711. For the reasons set forth above, Defendant was reasonably justified in denying the insurance claim.

### **B. Construing the Evidence Under the Summary Judgment Standard**

The Magistrate Judge correctly construed the evidence under the summary judgment standard. Here, Plaintiff attempts to blur the lines between a breach of contract claim (i.e., the arson defense) and a bad faith claim on denying an insurance claim. Numerous decisions in this district have recognized that summary judgment cannot be avoided on a bad faith claim by arguing the merits of the breach of contract claim. See, e.g., *Foley v. State Farm Fire & Cas. Co.*, No. 4:90-CV-1687, slip op. (N.D. Ohio 1991)(Dowd, J.); *Thomas v. Allstate Ins. Co.*, No. 1:96-CV-1529, slip op. (N.D. Ohio Aug. 15, 1997) (O'Malley, J.); and *Mayle v. Allstate Indem. Co.*, 2007 U.S. Dist. LEXIS 8544 (N.D. Ohio Feb. 6, 2007) (Adams, J.).

In each of the above cases, the Court distinguished between the breach of contract claim, where the disputed weight or probative value to be given conflicting evidence may create a fact question, and the claim of bad faith, where summary judgment can be found if there is evidence that makes the insurance company's position at least fairly debatable. Therefore, the Magistrate Judge was correct to recognize the existence of evidence that Defendant considered in denying the coverage for this claim, as well as dismissing the notion that the weight of the evidence was of importance. The evidence used by Defendant to deny Plaintiff's insurance claim cannot be ignored, and in fact, must be looked at to determine if Defendant had a reasonable justification for denial.

Under the summary judgment standard, only disputed facts are viewed in favor of the non-movant. "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."*Scott v. Harris*, 550 U.S. 372, 380 (2007). To view the facts in the light most favorable to the nonmoving party "means no more than that 'the party opposing a summary judgment motion is to be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue exists that justifies proceeding to trial." *Agosto v. INS*, 436 U.S. 748, 772 (1978).

None of the facts, as characterized by the Magistrate Judge, are in dispute. Plaintiff cannot deny, nor does Plaintiff dispute, the facts presented by Defendant in support of its motion. Defendant hired a private fire investigating company that determined the fire to be incendiary in nature. The investigating company considered the CFIU's determined cause and dismissed it as not viable. Defendant also hired a forensic accountant, who reported that prior to the fire, the Corbos had experienced a significant decline in cash flow, which they do not deny. Nor do they deny that the sale of the Building, the proceeds of which were to be used to pay a one-million dollar note coming due, had recently fallen through with no other significant buyers in the picture.

The above facts must be considered in order to determine if Defendant had a reasonable justification for denying Plaintiff's insurance claim. Therefore, Plaintiff's assertion that these facts are to be construed in their favor, by disregarding the information used by Defendant, and instead, adopting the facts asserted by Plaintiff, is an incorrect statement of the law.

Plaintiff's evidence, controverting Defendant's evidence, and creating an issue which may defeat an arson claim, is irrelevant to the inquiry at hand. Here, the inquiry is whether

10

Defendant had sufficient information to reasonably conclude that the Corbos set or participated in setting fire to the Building to obtain insurance proceeds. Therefore, Defendant's evidence cannot be ignored, in order to construe the evidence in Plaintiff's favor, as Plaintiff suggests. In order to determine if Defendant acted in good faith in denying the insurance claim, the information Defendant used in order to make the determination must be examined by the Court, even if the insurance company is the moving party on summary judgment.

### C. Characterization of the Facts

The Magistrate Judge correctly characterized the facts as to:1) the CFIU's opinion of the cause of the fire; and 2) what Plaintiff stood to "gain" by collecting on the insurance claim.

The Magistrate Judge correctly stated the opinion by the CFIU as to the cause of the fire, although Plaintiff asserts otherwise. The Magistrate Judge's statement about the cause of the fire, as opined by the CFIU, came directly from the CFIU Report of Investigation. (Docket #65-21, p. 82 of 91, Page ID 2059). Plaintiff points to deposition testimony of another investigator, who did not write the report and was not lead investigator, in order to cite a different cause for the fire. But, the fact that two CFIU investigators differed as to the cause only supports the Magistrate Judge's decision that the cause of the fire was fairly debatable; and Defendant had a reasonable justification to believe the Corbos caused the fire.

The Corbos may not have stood to "gain" $1,426,000, as it was characterized, from the insurance claim. But they did stand to receive $1,426,000 if the claim was accepted. Their current financial position; the fact that the Building had no current purchasers and was vacant; and a $950,000 note coming due in March, all support the Magistrate Judge's assessment that the Corbos stood to "gain" from the destruction of the Building.

11

### D. Report by the Bad Faith Expert Irrelevant

The Magistrate Judge correctly found the report to be irrelevant because the expert opinion offered by Plaintiff did not provide sufficient evidence to create a genuine issue of material fact to overcome summary judgment. The expert made the same mistake as Plaintiff, and attempted to save the bad faith claim by arguing the merits of the breach of contract claim. The report reasoned that Defendant did not act in good faith because the evidence relied on in the denial was insufficient to prevail on an arson defense to a breach of contract claim. This finding in the expert report is irrelevant to the inquiry at hand, which is only whether Defendant had sufficient information to reasonably conclude that the Corbos set or participated in setting fire to the Building to obtain insurance proceeds. Therefore, the report does not create a genuine issue of material fact regarding whether Defendant lacked good faith in denying Plaintiff's claim, and as such, does not preclude summary judgment.

### E. Claim for Punitive Damages and Attorney Fees

Plaintiff seeks punitive damages and attorney fees in relation to its claim of Defendant's lack of good faith. The availability of punitive damages, however, is predicated upon a showing of a lack of good faith. See *Helmick v. Republic-Franklin Ins. Co.*, 39 Ohio St. 3d 71, 529 N.E. 2d 464 (1988); *Thomas*, 974 F.2d at 712 n.6 ("Because no bad faith was shown, Thomas' [sic] claim for punitive damages was properly denied."). Because Plaintiff's claim for Lack of Good Faith cannot be sustained, its prayer for punitive damages and attorney fees, as relates to that claim, lacks merit. See *id.*, 529 N.E. 2d at 468; *Thomas*, 974 F.2d at 712 n.6.

## IV. CONCLUSION

For the foregoing reasons, the Court ACCEPTS the Magistrate Judge's Report and

Recommendation, and grants Defendant's Motion for Partial Summary Judgment dismissing Plaintiff's Second Claim for Lack of Good Faith.

**IT IS SO ORDERED.**

**Dated: February 17, 2011**

<u>**s/Christopher A. Boyko**</u>
**CHRISTOPHER A. BOYKO**
**UNITED STATES DISTRICT JUDGE**